Yes, your honor. David Baines appearing on behalf of the appellant and defendant Melvin David Diaz. Your honor, I would like, your honors, I'd like to reserve five minutes of my time for rebuttal. Keep an eye on the clock and we'll try to give you some time for rebuttal. Mr. Diaz was indicted for four counts of inducing a child and one count of traveling in interstate commerce for illicit sexual activity. The case proceeded to trial and the government's principal witness was the victim who I'll refer to as Carmelita. Carmelita took the stand and testified that she, as kind of a high school prank, called Mr. Diaz, who was actually here on Guam, as kind of a cold call, just making a random telephone call. She told Mr. Diaz that she was 20 years old and a lawyer and continued chatting with him. Apparently this, they got along well on the telephone because they then began to talk to each other over the telephone and only by the telephone for the next couple of months. There was no contact via any smartphone or Twitter or emails or computers. Strictly telephone. She continued... But as I understand, the record counsel, that was five or six times a week during the period of February to May? Yes, your honor. And importantly, they never talked about sex. Mr. Diaz never... This is Carmelita's own words. He never attempted by telephone or ever to try to induce her into having sex. They were platonic. Mr. Diaz in May told her that he was coming over to visit his son who had recently moved to Rota and had a grandchild. Carmelita suggested that since you're coming to Rota anyway, why not come by and see me and meet my parents? Mr. Diaz did introduce himself to his parents and during this May visit, they did not have sex. Is that for sure? It's a little bit gray to be honest. To be fair, it's my understanding that she suggested they did have sex during that time and then there was some impeachment of that testimony. And so the judge let in the impeachment, but the jury was left with determining whether her testimony was right or the impeaching evidence was right. Yes, that's accurate, your honor. And it is so that he visited the woman, he met her parents, he stayed at their home. Two weeks later, he obtained permission to date their daughter and he also attended her 8th grade graduation ceremony. When she was 15 and a half, your honor. That was all in May, right? Yes, your honor. In May of 2010. In May of 2010, your honor. All right, so we have then in that period of time, at least two weeks, that he was there, he was at her home. He obtained permission to date their daughter and he attended her 8th grade graduation ceremony. I only ask you these things because you ought to be more obviously acquainted with the facts than I. I'm reading them and trying to put them down. But it seems to me that at least during that period of time, he had time to have sex. Whether he did or not is subject to some dispute. Yes, your honor. And I understand it's disputed, but I want to elaborate on that. In that when Carmelita was interviewed by a special agent with the FBI with forensic training in dealing with children, she testified, I'm sorry, she stated that the first time they had sex was in August and on Guam. And this becomes important later. And when our investigator talked to Carmelita and reported her, she signed a declaration under oath, which is admissible as if an affidavit underneath CNMI law. She again stated the first time we had sex was in August. In the affidavit? Yes. But on the witness stand, she said it was in May. And then was impeached. And then she was impeached, and then she said. And so it was left to the jury then or to the judge, if the judge were to think about that, to determine whether he could believe which testimony, right? Yes and no, your honor. I mean, just impeachment doesn't mean that the jury's got to believe or the judge has to believe what the impeaching evidence is. The judge has a right to think about the evidence and decide in his own mind or their own minds what they believe. Isn't that true? Absolutely correct, your honor. However, if I may, for in terms of. Wasn't he also introducing his companion as his wife or fiance? No, your honor. She was. She introduced herself as his wife. Counsel. Sorry. I just wondered if you could tell us, review for us briefly, what are the elements of the crime of which your client was convicted so we can put this in context. Yes, your honor. And that leads to one of our points on appeal. He has to travel in interstate commerce with the purpose to engage in illicit sexual activity. And this is important because. So the element of illicit is the age of the person is relevant? Yes, your honor. It has to be under the age of 16. And also the traveling for the purpose. The purpose under Ninth Circuit case law and other state circuit case law, going back actually to a United States Supreme Court case, is that the a-dominant purpose for the travel has to be for engaging in illicit sex. And importantly, here there was no jury instruction given stating that a-dominant purpose for the travel had to be to engage in sexual activity with Carmelita. And it was the jury instruction that was given just simply said follow the indictment and said for the purpose. And this is important in this case. So let me make sure I understand your position. So if he is traveling to Rota in May with the purpose of having sex with Carmelita, but does not know that she's a minor, in your view that would not be a violation? That's right, your honor. Because he's not knowingly engaging in illicit sex. It has to be, in your view, knowing he has to have an intent, not simply an intent to have sex with this person, he has to have an intent to have sex with a person who he knows to be a minor? Yes, for the purpose of having illicit sexual conduct. Illicit is sort of a loose term. Yes, it is, your honor. I mean, it can mean a lot of things. The way that the jury was given the instruction was that she had to be under the age of 16. And if I may, your honor, to go back to an earlier question, you said, well, wasn't it up to the jury to decide if they had sex in May? That wasn't part of the jury deliberations, your honor, because it was not significant in terms of adjudication of guilt or innocence. She was under 16 in any event. Yes, she was 15 and a half. I guess the only reason I'm trying to make sure what you're telling me is that if I'm looking at sufficient evidence, then at that point I've got to look at what you've got in the record. And I had, he stayed with her. He had previously spoken with her five or six times per week for up to two hours per time. He got permission to date her. He started calling her his wife or fiancée. Now, I know you dispute that, but that's not what I saw in the record. He purchased a fake diamond ring. He went to her graduation. All of that, he admits he knew she wasn't in her 20s. He admits he attended her eighth grade graduation. I'm trying to figure out why there isn't enough evidence that a rational juror would find him guilty. I think a stronger argument to be candid with, your honors, is the failure to include a jury instruction that included that a dominant purpose had to be, a dominant purpose for him traveling to Rota had to be to engage in illicit sexual conduct. How does that help you? If the jury was instructed that he had to go with the purpose, if it's instructed that it had to be the dominant purpose, what's the difference? Well, your honor, I think it could make a significant difference in the jury here because the trial testimony not only of Carmelita herself but of Mr. Diaz's two sisters was that the reason he was going to Rota was to visit his son, not to visit Carmelita. That could be argued that that is why he went. That wasn't his purpose. Yes, your honor, but I think that by including the term dominant, and your honors, I'm sorry, but I've run out of time. If you want me to continue, I will. Keep going. The reason for the dominant makes it clear that it has to be a significant purpose, not just a purpose. And the jury could have been confused or come to the wrong standard of proof of saying, well, yes, he did go to Rota, which was uncontested, and it was based upon Carmelita's testimony that they did have sex on Rota. Therefore, it doesn't matter whether he was also seeing his son and his grandson. And I think that a jury instruction, now, admittedly, it was not objective to it. I was going to say we didn't have any objection about a jury instruction or even an offer of one that you now would say is a problem. Yes, your honor, and I understand it's underneath the clear error standard, but the point being that at the trial there was a distinct defense put on, a defense that the reason he was traveling to Rota was not to engage in illicit sexual conduct, but instead to see his son and grandson. You have raised a sentencing issue. Was there any objection to the sentencing either? Yes, your honor. I filed a sentencing memorandum arguing that Mr. Diaz should be sentenced to below guidelines or perhaps even to time served with a long term of review. The point being that even the sentencing judge admitted that Mr. Diaz had issues with women. Mental issues. You said it twice, your honor. And what I argued was that that should be, you can get that through mental counseling. And supervision. What was the sentence he received? The sentence he received was the maximum underneath the guidelines, 97 months. And also, your honor, the court included the probation, neither the probation nor the court ever found as a matter of fact when this crime commenced. And this is important because two of Mr. Diaz's prior sentences were in May, August of 15, which was just around the two year period, ten year period, sorry. So that if the first time they had sex was in September, those two convictions should not count and it would be manifest error because those two points dropped him down to another criminal history category so that his sentence would be less. If he was sentenced still to the maximum, he'd receive ten months less. But if they had sex in May, then no problem. Then within ten years, yes, your honor. It would be within ten years. So there wouldn't be anything to talk about if he did it in May. Yes, your honor. Or before, as I calculate, before August 15th of 2010. Yes, that's right, your honor. So, again, we're looking at the evidence before the court, right? Yes, your honor. There was no determination. Well, I mean, the problem is that you have a pre-sentence investigation report that suggests exactly what the judge did, and you have a law that suggests the district court can, without commenting much on it, rely on the pre-sentence investigation report to do what it has to do. Yes, your honor. And in this particular instance, that's why I was questioning you quite a bit about the amount of time he was at her home in May because it seems to me that there's adequate evidence to sustain that he, in fact, had sex with her or may have gone there to have the sex in May based on the evidence. And, therefore, it seems to me the pre-sentence investigation report adequately substantiates the judge's decision. Well, there was no – I mean, the bottom line is I can't undo this, judge. The district court has pretty much some discretion to do what they need to do on sentencing, and I can't undo this, judge, if there is some basis for what the judge did. And that's why I tried to question you about that. It seems to me in this record there is some basis. So I wanted to know how you'd respond. I think, your honor, that there was no specific finding either by the judge. Well, that doesn't have anything to do with the finding. The judge can rely, as you know what the law is, on the pre-sentence investigation report, which suggested there was adequate to do what the judge did. The judge doesn't have to say it again in court. He made a decision – or, excuse me, the judge made the decision, and after making the decision we have to look at what evidence there is to sustain what the judge did. Yes, I understand, your honor. If I can just bring up two last points. My time is expiring, but if I could continue. It's actually going. Go ahead. There is, in addition to one of the sentences, it was consolidated both in terms of a plea agreement and a sentencing with a 1999 deferred plea. There is a Ninth Circuit case, U.S. v. Allen, which says that if the case is consolidated, it should be grouped as just one point. Now, admittedly, this case was interpreting or relying on an advisory note, which has since been revived. We no longer include that. Since now the advisory notes along with the guidelines are only advisory, we still have a valid Ninth Circuit opinion that says that if the case is consolidated for sentencing, it should be just one point. And again, with Mr. Diaz, that would substantially affect his sentence because it would just at one point reduce his criminal history from three to two, which again would reduce his sentence even if to the maximum to like ten months. And, Your Honor, I understand that because the advisory notes have changed, the court will say, well, look, we're not bound by that decision. And that may be true, but since the guidelines are now advisory, the court could fashion its own case law and say, well, this is what we're going to hold as a matter of policy, a matter of law, that if two cases are consolidated with one plea agreement and one sentencing, you get one point. The court is free to do that. Thank you. You are out of time. You're over your time, in fact, but we'll give you a little time for rebuttal. When you do come forward for rebuttal, a question I'm going to ask you is and I want to give you a chance to think about this. If you had objected to the jury instruction and you had a chance to sort of submit what you think is the correct jury instruction, how would you modify this or what would be the language that you think would be satisfactory? And I know it's going to be tough to listen to a point of counsel and come up with this, but I thought you had at least a little time to think about it. Thank you very much, Your Honor. We'll hear from the government. I know there are visitors standing in the back. I wonder if we can get some chair over here. I've got about three chairs over here. Come forward and take these seats, and let's see if we can find seats for as many visitors as possible. Don't be shy. Come forward. There's a chair over there. There's a bag on it which can be removed. And there are three chairs over here. I still see visitors standing in the back. Come forward. No. We've got the judge back there. He seems to be wanting to go out. He's probably not a visitor. He's probably been here before. Very good. We'll hear from the government. We have police support. Good morning, Your Honors. The record of five women on behalf of the United States. Your Honor, I think the place that we should start, simply because Your Honor asked a question about the dominant purpose instruction, I would cite this court to the case of U.S. v. Winslow, which is the Ninth Circuit case. And in that case, basically, the defendant took the family hostage in Arizona to guarantee his safe passage into California. He gets to California. He rapes the daughter. And at trial, he said, well, his purpose of traveling to California with the family was to guarantee his safe passage. That was his defense. And what this court said was that that may be true, but that a reasonable jury could find that this was one of his dominant purposes. So this court has recognized the fact that what other circuits have more than one purpose for taking a trip. And I think what the cases say is that as long as the travel is done where having the sex is incidental to the trip, then and only then would the government have a problem. For example, let's take the May trip. He believed that she was over the age of 16, if you take what he says is true. And so he traveled there, met her. And even though he found out that she was under 16 when he went to her eighth grade graduation, that wasn't his intent to have sex with somebody that was under 16. So in that case, having sex with this young girl would have been incidental to his travel. But he did have sex with her, according to her testimony, which the court has already recognized was impeached. And he dated her. I'm sorry, which trip are you talking about? I'm talking about the May trip. Okay, so there has to be evidence that he, in fact, knew. You agree with opposing counsel he'd have to know ahead of time that she's under 16. Ahead of time. And he wasn't charged for it. And I just said that in that instance. I'm sorry, he was not charged with the May trip. Correct. He was not charged with any activity in May. The indictment specifically charges him with the months of August, September of 2008. Now August she traveled to Guam, right? That's correct. That's correct. So how can he be charged with her travel? Well, he was actually charged based on the enticement accounts, which the jury acquitted him of. Okay, so we're talking about the things of which he got convicted of. Correct. Because you can't appeal an acquittal, right? So we have to sort of take it as a fact the jury acquitted him for August of enticement. So if May he's not charged with and August he didn't travel, when would have been the travel date? Well, he flew to Rota from Guam in September. And she was still under 16. He turned 15 on January 11th of 2010. Her 16th birthday would have been January 2011. Okay. So you're not counting the May trip at all, and you're not counting August. This is all about September. What the May trip goes to is his intent and his knowledge. That's all it goes to. It's just evidence. Yes. You're not charging with May trip. That's correct. But the May trip becomes significant, doesn't it, when we move to computing the criminal history points? That's correct. It isn't significant as we're talking about the sufficient evidence, because what he was convicted of really was not May. But the thing that is important is, why about the computing of the criminal history points? So I guess my question to you is, given the indictment, aren't we looking for time between August 1st and August 15th, when they could have had sex, rather than relating clear back to May? Actually, we're looking at relevant conduct. And under the relevant conduct means, what the guideline says is that commencement of the instant offense includes any relevant conduct. And if you go and look at the PSR, the probation officer actually included a section in there where the FBI was able, actually April of 2010, to report that this 40-year-old man was involved in a sexual relationship with a juvenile. That person turned out to be Melvin Diaz. Then there was another report, or there was another section in the PSR, and that's excerpts of record page 78. There was another section in the PSR where the FBI actually interviewed the witness and said that in early 2010, when he was at the airport, he saw CP, the person that was later identified as a defendant, kissing and acting inappropriately, to the point that it disgusted everybody at the Rota airport. So that, too, is relevant conduct. And in addition, Special Agent Ewing testified in the sentencing hearing. I'm sorry. In which sense is it relevant conduct? It's not illegal. Is it preparation? I'm trying to understand what you mean by relevant conduct. Well, in the guidelines it's defined as all acts committed by the defendant. But the crime is travel. That's correct. With the purpose. The travel took place more than ten years after these offenses. September. That's correct. So I'm not quite sure how we get that. Well, the things that he did in April and May is relevant conduct to this offense because at the time he knew she was 15, or he knew she was under 16. And this was all in preparation. For traveling in September? Yes, Your Honor. Well, the guideline language is the relevant language is conduct relevant to the offense. Is that what you're relying on? Yes, it is. And him. You're saying that preparation for it, you're talking about the possibility of doing it that that's relevant to the offense, which is the actual travel. Yes, that's exactly right. Is there a case that we can look at that supports that? Had I found a case that said that, I would have cited it in my brief. I did not. We just thought maybe last night in your hotel, or you live in Guam. I live in Guam. Oh, I'm sorry. Last night at home when you were busy on Lexington, you might have come up with something. I was busy on Lexington. I was not being, you know, I knew you were, but I thought maybe you, but there is no case. So explain to me why we should make a case here. I mean, this is travel. This is not sex. This is travel with her intent. So it has to be something that is relevant conduct to the travel. I mean, I guess I can see buying the airline ticket or something, you know, but. Well, it's. Hugging and kissing? I mean, part of the offense is travel with intent to have an illicit sex act. Right, so it either has to be relevant to the intent, or it has to be relevant to the travel. And it's relevant to the intent because part of intent is knowledge, in this case, that this particular person is under the age of 16. That's why I said that when he traveled in May, he didn't know. But when he traveled in September, he knew. But you have to push it back before September. You have to push the commencement of the offense. I mean, isn't that what matters? You have to say, look, the offense was consummated or completed when he travels, but if it commenced earlier, you get the earlier date. So you have to push it back to get within 10 years. You have to push it back before September. How far do you have to push it back? I lost track. The conviction took place in August 15, 2000. Well, I thought what you were going to say was that the May travel was within the 10 years, and so you could look at that. He actually went there in May when he went to the graduation. That's when he found out that she was actually under 16. And so part of the knowledge, part of the knowledge. Well, he has the knowledge at that point, but he could have the knowledge, and with that knowledge he could say, oops, I'm going to wait until she turns 16. So the mere fact of knowledge doesn't commence the offense. You have to have something happening other than knowledge. The knowledge becomes relevant if he later does something with that knowledge. But mere knowledge isn't enough. I agree with you. Mere knowledge isn't enough. So what is the act? What is the thing that happened, the real-life event that happened, and when did it happen that puts the commencement of a crime within 10 years? Well, it would have been the telephone calls. It would have been them meeting in Guam in August. All of that was preparation. It was grooming this young girl for sex. But, again, it's a travel that matters. Correct. The crime is not sex. The crime is travel. But it's also with the intent. Okay. When is the 10-year period, though? For the purposes of the convictions, the counting notes, it would have been August 15th. Actually, it would have been in July because the judgment that counsel supplemented the record with made the – it was non-crotonal to July. Okay. So all the stuff that happened in August doesn't help you. You have to get something July or earlier, right? Right. We're on the same page. So what is that act, July or earlier? Your Honor, I'm going to keep saying the same thing. Part of the travel is the intent and the knowledge. I mean, if he traveled no matter when – Let me ask you – let me put it to you differently. Do you have an act that happened July or earlier? Not a mental state, not an intent, an actual physical act in the world, in the real world, evidence that something actually happened that you can characterize as commencement of the offense of traveling in September. You would do or you don't, or you don't know. Based on those – did you repeat that one more time? Did anything happen in the physical world? You know, not in his head. Past July, past the 10-year period. That is relevant conduct to September, the September travel. I'm sorry, before July. I'm sorry. It would have to be before July 2010. Before July. My colleagues are faster than I am here, but that was my question. Did anything happen before July? Any physical act?  Based on the evidence, Your Honor, the only – Only based on the evidence, in the record. That's – based on the evidence, Your Honor, there wasn't any travel after May of – Well, he did travel in May, which is before August. That's correct. He asked her parents for permission to date her. He asked that he date her, and he introduced her to his son and grandson in Rota. And he – Did he purchase the fake diamond ring? He purchased the fake diamond ring according to CT in Guam. So that would have been in Guam. Did he admit – did he attend her eighth-grade graduation then? I'm sorry, Your Honor. He attended her eighth-grade graduation then? Correct. That's correct. Help me again. Was there an objection to the – to this – to the use of these convictions? There was no objection by defense counsel. He accepted the pre-sentence report as accurate. On this point? So we're looking for clear error? Yes, we are. Okay. Anything further? Your Honor, we would just ask court to confirm the conviction in the sentencing. Thank you. Your Honor's time, Mr. Baines, but we'll give you a minute for a butler just to take it. Yes, Your Honor. I want to start off with answering your question, Your Honor. And I would – how would we – how would I have, in retrospect, asked the jury instruction to read And after stating the elements, would add – and this is taken actually from the language of United States versus Bang, which has been quoted by – cited by both sides. It is not necessary for the government to prove that a criminal sexual act was the sole purpose for a defendant traveling from state to another, but the government must prove that it was a dominant purpose or as opposed to – as opposed to an incidental one. A person may have more than one dominant purpose for traveling across a straight line. And what do you think the given instruction failed to include? It didn't include language at all, Your Honor, about that the government had to prove that it was a dominant purpose as opposed to an incidental one. And we're not talking about the September trip? No, Your Honor. I mean, we're talking generally in terms of – Well, the government has disowned the May trip. Yes, Your Honor. Was the jury allowed to convict based on the May trip? No, well – He was not charged with the May trip. He was not charged with the May trip, Your Honor. So we are talking September. He was – in the indictment, it was actually from August, but the government presented evidence that he traveled in September, October – September and October for our purposes. And there was testimony by Carmelita herself, but also from the two sisters, that he was – every time he was going to Rota, he was to see his son and grandson. So that the defense could argue to the jury that the – that it was the dominant purpose that he was – a dominant purpose that he was going to Rota was to see his son and grandson. Okay. And, Your Honor, I just want to – one point. The government has contended that by attending the eighth grade graduation, he had knowledge that she was under the age of 16. That's an assumption. You know, one might think, well, eighth grade graduation, that should put you on alert that she's young. But, in fact, at the time, she was 15 and a half. Right. The jury knew that. Yeah. That's true, Your Honor. Yeah. Unless the – I think at that point he realized she wasn't a 20-year-old lawyer, right? That's absolutely – yes, Your Honor. I mean, that's obvious. He figured that out. Yes. Okay. Thank you. Thank you very much, Your Honors. The case is now herewith passed amended.
judges: KOZINSKI, SCHROEDER, SMITH